FILED
2021 JUN 14 AM 9:54
CLERK
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **TRACIE KING,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:20-cv-00775-JNP-JCB** |
| **CELLCO PARTNERSHIP dba VERIZON WIRELESS,** | **District Judge Jill N. Parrish** |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

Before the court is Defendant Cellco Partnership dba Verizon Wireless's ("Verizon") Short Form Discovery Motion to Compel Production of Plaintiff Tracie King's ("Ms. King") Tax Returns.[1] The court held oral argument on the motion on June 3, 2021. Esabelle Khaosanga appeared on behalf of Ms. King, and Robert O. Rice appeared on behalf of Verizon. After hearing argument from counsel, the court made oral rulings on the motion. This order memorializes those rulings.

### BACKGROUND

Ms. King filed this action seeking damages for alleged racial discrimination and retaliation during her employment with Verizon.[2] Ms. King sought back pay, among other relief.[3] Verizon denied the allegations and asserted that Ms. King is not entitled to a back pay award

---

[1] ECF No. 17.

[2] ECF No. 2 at 8-11.

[3] ECF No. 2 at 11.

because she failed to mitigate damages and, if damages do exist, they must be offset by her actual earnings or by the amount that she could have earned through reasonable diligence to mitigate her damages.[4]

After the entry of an agreed-upon scheduling order, Verizon served written discovery requests upon Ms. King.[5] At issue here is Verizon's third request for production of documents, which sought:

> All federal, state, county, and city tax returns, including all W-2's, exhibits, schedules, worksheets, 1099 forms, and attachments filed by Plaintiff, whether filed individually, jointly with some other person, or by any sole proprietorship, partnership, corporation or other entity in which Plaintiff has had any interest for the years January 1, 2015 [sic] to the present, including all documents relating to the audit of any such returns.[6]

Ms. King provided all but four of her W-2s from the post-Verizon employers, but she refused to provide her tax returns.[7]

After an unsuccessful meet-and-confer process,[8] Verizon filed the instant motion to compel Ms. King to produce her tax returns.[9] Verizon's motion contends that Ms. King's post-Verizon income is relevant to its mitigation and offset defenses and that Verizon lacks a complete

---

[4] ECF No. 12 at 9.

[5] ECF No. 17-1.

[6] ECF No. 17-1 at 13 of 38.

[7] ECF No. 17-1 at 13 of 38; 26-27 of 38; and 37 of 38.

[8] ECF No. 17-2.

[9] ECF No. 17.

and accurate accounting of Ms. King's post-Verizon employment activity for a total period of approximately 15 months in addition to missing at least four W-2s from known employers.[10]

      In response, Ms. King argues that the confidential nature of tax returns requires a heightened standard of protection that Verizon cannot overcome. Ms. King cites *Phillip M. Adams & Associates, LLC v. Fujitsu Ltd.* for the proposition that "a more stringent standard for discovery of tax returns applies than the general standard of relevance for discovery in Fed. R. Civ. P. 26(b)(1)."[11] This more stringent standard requires the *requesting* party to prove: "(1) the tax returns [are] relevant to the subject matter of the action, and (2) a compelling need [exists] because the information is not readily obtainable from a less intrusive source." *Id.* Ms. King argues that although the tax returns are relevant to Verizon's defenses, her W-2s should provide more than enough information about her post-Verizon employment income. Therefore, Verizon does not have a need, much less a compelling one, to obtain her tax returns. As to those W-2s that have not been provided, Ms. King provides that they will be soon. Because Ms. King has or will soon produce all the foregoing wage and compensation documents, she also argues that providing tax returns is burdensome, intrusive, and disproportional to the needs of the case especially because the tax returns may reveal information beyond Ms. King's income that she does not want to disclose.

---

[10] Verizon also wanted Ms. King's tax returns to determine whether she truthfully represented that she paid her taxes in prior litigation. ECF No. 17 at 3. Although witness credibility is always relevant at trial, whether Ms. King was truthful in prior litigation is tangential to "any party's claim or defense" at issue in this action. Fed. R. Civ. P. 26(b)(1). Therefore, for purposes of this order, the court's focus is the impact of the tax returns on the parties' claims and defenses, not Ms. King's credibility.

[11] No. 1:05-cv-00064-TS, 2010 WL 1330002, at *8 (D. Utah Mar. 29, 2010) (citation omitted).

The court disagrees with Ms. King. As explained below, the two-prong test is an improper standard. Instead, the court applies Rule 26 and finds that Ms. King's tax returns are relevant to Verizon's mitigation of damages and award offset defenses, proportional to the needs of the case, and not unreasonably cumulative or duplicative. Additionally, the court finds that DUCivR 26-2's Standard Protective Order ("SPO"), which automatically applies to every case in the District of Utah, sufficiently protects Ms. King's privacy interests in this case. Accordingly, Verizon's motion is granted, and Ms. King is ordered to produce her tax returns.

## ANALYSIS

Ms. King must produce her tax returns because they are relevant to the claims and defenses in this action and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issue, and whether the  burden or expense of the proposed discovery outweighs its likely benefit.

Rule 26 does not create any special rules for particular categories of information sought in discovery. Instead, Rule 26 requires only that the discovery sought be nonprivileged, relevant to the claims and defenses in the action, and proportional to the needs of the case.

Even though material may be nonprivileged, relevant, and proportional, Rule 26 also recognizes instances in which a court must afford additional protection to those materials. Consequently, Rule 26(b)(2) allows a court by motion or sua sponte to limit discovery, especially where it "can be obtained from some other source that is *more convenient*, *less burdensome*, or

*less expensive.*" Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). In addition to Rule 26(b)(2),

Rule 26(c) allows the court to issue protective orders when a *producing* party makes a good

cause showing that the party needs protection from "annoyance, embarrassment, oppression, or

undue burden or prejudice." Fed. R. Civ. P. 26(c)(1). Therefore, Rule 26 provides a

comprehensive standard to guide the parties and courts as to when material is discoverable and

when it or the party producing it needs protection.

       Despite the comprehensive provisions in Rule 26 that apply to all discovery materials,

several courts have taken the liberty to do what Rule 26 does not: create special rules for the

discovery of tax returns.[12] For example, the court in *Sadofsky* articulated a two-prong test to

determine whether tax returns were discoverable: (1) the returns "must be relevant to the subject

matter of the action, and (2) a compelling need must exist because the information is not readily

obtainable from a less intrusive source."[13] Besides the general problem of creating special rules

for categories of discoverable information when Rule 26 does not, both prongs suffer from

additional problems that, at best, ignore Rule 26 and, at worst, directly contradict it. These

problems with each prong are explained in order below.

       Although prong one—like current Rule 26(b)(1)—properly relies on "relevance," it

improperly tethers the relevance standard to "the subject matter of the action."[14] This directly

contradicts Rule 26 because the phrase "the subject matter of the action" was stricken from Rule

---

[12] *See, e.g.*, *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 149 (E.D.N.Y. 2008) (collecting cases); *see also Pendlebury v. Starbucks Coffee Co.*, 04-CV-80521, 2005 WL 2105024, *1 (S.D. Fla. Aug. 29, 2005) (recognizing split of authority among federal courts regarding the special status of tax returns).

[13] *Sadofsky*, 252 F.R.D. at 149.

[14] *Id.*

26 in the 2000 amendments to Rule 26.[15] Instead of the "subject matter of the action," relevance under Rule 26(b)(1) is now tethered to the parties' "claims and defenses."[16] Thus, prong one is outdated and, consequently, directly contradicts Rule 26(b)(1).

Prong two's "compelling need" standard is a worse Rule 26 violator than prong one. As a threshold matter, the "compelling need" standard appears nowhere in any of the Federal Rules of Civil Procedure governing discovery. Far worse than not appearing in Rule 26, however, the "compelling need" standard inexplicably makes the clear language of Rule 26 disappear. Under Rule 26(c), the burden rests upon the *responding* party—not the *requesting* party—to establish "good cause" to obtain a protective order from discovery.[17] However, the "compelling need" standard ignores Rule 26(c) and shifts the burden from the *producing party* to the *requesting party* by making the requestor show a "compelling need," which, as shown above, is not a phrase that Rule 26 employs.

Worse yet, courts have applied the "compelling need" standard to make additional parts of Rule 26 inexplicably disappear. When considering whether a "compelling need" exists, the *Sadofsky* line of cases holds that the inconvenience and expense of the requesting party is not a factor. Specifically, *Sadofsky* and like cases hold that where a party has produced other salary-disclosing documents, such as W-2 or 1099 forms, the receiving party must use those documents to calculate income even though doing so is far more burdensome, less convenient, and more

---

[15] Fed. R. Civ. P. 26 advisory committee's note to 2000 amendment.

[16] Fed. R. Civ. P. 26(b)(1).

[17] Fed. R. Civ. P. 26(c)(1).

expensive than seeing the total income expressed in a tax return.[18] However, this application of "compelling need" ignores Rule 26(b)(2)(C)'s injunction to require a party to use discovery obtainable from another source only if it is "*more convenient*, *less burdensome*, or *less expensive*."[19] By requiring parties to use other documents to prove income when doing so is less convenient, more burdensome, and, ultimately, more expensive, courts compound the already stark conflict that the two-prong test has with Rule 26.

To be sure, this court enjoys a good two-prong test as much as the next court and agrees with its two-prong-test-using colleagues that tax returns contain highly sensitive information that may need protection. However, this concern about the sensitivity of information provided in tax returns provides no legal justification for conjuring an invisible phantom standard that has no textual basis in the Rules and empowering it with the supernatural ability to make dead Rule 26 text eerily reappear while simultaneously making the alive and visible text of current Rule 26 disappear. With all the effort that goes into creating and amending the Federal Rules of Civil Procedure, believing in, applying, and empowering phantom standards is difficult for this court to do. This is especially true where, as here, when Congress wants to provide special protection for tax information, it knows how to do so.[20] Because the Federal Rules Committee, the United States Supreme Court, and Congress have not taken any action to provide special protection for

---

[18] *Sadofsky,* 252 F.R.D. at 150.

[19] Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

[20] *See, e.g.*, 26 U.S.C. § 6103 (establishing duties on government employees regarding disclosures of tax information); 26 U.S.C. § 7213 (imposing up to five years in prison for government official's willful disclosure of tax information to an unauthorized person); 26 U.S.C. § 7431 (establishing civil liability against government officials who improperly disclose tax information).

tax returns outside of the standards, burdens, and protective mechanisms in Rule 26, this court declines to believe in and empower legal ghosts and, instead, relies on Rule 26 to determine whether Ms. King's tax returns should be produced here.

Under the principles of Rule 26, Ms. King must produce her tax returns because they are relevant, proportional, not unreasonably cumulative, and are sufficiently protected under the SPO. The information in the tax returns is relevant to the claims and defenses at issue in this action. Verizon has asserted the defenses of mitigation of damages and award offset, which necessarily require verification of Ms. King's post-Verizon income.[21] The court finds the production of the tax returns proportional to the needs of this case because the amount of damages awarded in a discrimination case is important both to the plaintiff, defendant, and the jury that will be making the ultimate damages determination if liability is established. Ms. King has greater access to information relating to her post-Verizon income than Verizon. Tax return information is important to resolving the issue of mitigation and offset here because Verizon is still missing four of Ms. King's W-2s and needs to account for all income that she had during a total unemployment period of 15-months after she left Verizon. The burden on Ms. King to produce her tax returns is minimal compared to the benefit of understanding her income during the relevant period sought in Verizon's discovery requests.

Although the tax returns are relevant and proportional—and therefore discoverable—under Rule 26(b)(1), the court carefully considered Ms. King's argument that her W-2s and other wage and compensation documents provide a more convenient, less burdensome, and less

---

[21] *See, e.g.*, *Frappied v. Affinity Gaming Black Hawk, LLC*, No. 17-CV-1294, 2018 WL 1899369, *5 (D. Colo. Apr. 20, 2018).

expensive way to determine her income, which makes producing the tax returns unreasonably cumulative under Rule 26(b)(2)(C). However, Ms. King's argument is unavailing here because she has yet to produce four post-Verizon W-2s and has yet to account for any income received during a 15-month period of unemployment after she left Verizon. Consequently, the W-2s do not and may not tell the entire story of her post-Verizon income, and requiring Verizon to piece together her income with these incomplete documents is not "more convenient, less burdensome, or less expensive"[22] than merely receiving her tax returns. Therefore, Rule 26(b)(2)(C) does not counsel against the production of Ms. King's tax returns under these circumstances.

Although discoverable under Rule 26(b)(1) and (2), Ms. King understandably has concerns about producing sensitive tax information to Verizon. However, under Fed. R. Civ. P. 26(c)(1), the court's SPO applies in every case filed in the District of Utah. DUCivR 26-2(a). Under the SPO, Ms. King may designate certain information produced in discovery as "Confidential" or "Confidential—Attorney's Eyes Only," to address the issues of concern in this case. The SPO provides Ms. King with assurances that Verizon will adequately guard her sensitive tax information or will face court-imposed consequences for failing to do so.

**ORDER**

Therefore, IT IS HEREBY ORDERED that:

1.      Verizon's Motion to Compel Production of Ms. King's Tax Returns[23] is GRANTED.[24]

---

[22] Fed. R. Civ. P. 26(b)(2)(C).

[23] ECF No. 17.

[24] The court declines to award expenses under Fed. R. Civ. P. 37(a)(5) because the arguments for and against the Motion were substantially justified in that they had a reasonable basis in law and fact.

2.      Ms. King shall produce the relevant tax returns to Verizon within seven days of this

Order, no later than June 21, 2021.

        DATED June 14, 2021.

                                BY THE COURT:

                                _____
                                JARED C. BENNETT
                                United States Magistrate Judge