## THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| **TRACIE KING,** | **MEMORANDUM DECISION AND ORDER** |
| **Plaintiff,** | |
| **v.** | **Case No. 2:20-cv-00775-JNP-JCB** |
| **CELLCO PARTNERSHIP dba VERIZON WIRELESS,** | **District Judge Jill N. Parrish** |
| **Defendant.** | **Magistrate Judge Jared C. Bennett** |

District Judge Jill N. Parrish referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A).[1] Before the court are: (1) Plaintiff Tracie King's ("Ms. King") motion to compel discovery responses from Defendant Cellco Partnership dba Verizon Wireless ("Verizon") and to reopen discovery to allow Ms. King to depose Sarah Lofgren ("Ms. Lofgren"), conduct a Fed. R. Civ. P. 30(b)(6) deposition of Verizon, and serve a subpoena ("Subpoena") on Sedgwick Claims Management Services ("SCMS");[2] (2) Ms. King's motion to reopen discovery to allow her to depose Brian Cervinski ("Mr. Cervinski");[3] and (3) Verizon's short form motion to quash the Subpoena.[4] The court held oral argument on the motions and, at the conclusion of the hearing, took the motions under advisement.[5] Having carefully considered

---

[1] ECF No. 8.

[2] ECF No. 86.

[3] ECF No. 61.

[4] ECF No. 65.

[5] ECF No. 100.

the parties' written memoranda and counsel's oral arguments, the court issues the instant Memorandum Decision and Order on the motions. Based upon the analysis set forth below, the court denies both of Ms. King's motions and grants Verizon's short form motion to quash the Subpoena.

## BACKGROUND

Ms. King initiated this case against Verizon on November 3, 2020, alleging causes of action under Title VII for racial discrimination, hostile work environment, and retaliation.[6] The court entered the initial scheduling order on January 14, 2021.[7] On June 21, 2021, the parties filed a stipulated motion to stay this case due to Ms. King's health.[8] The court granted that motion on June 23, 2021, stayed this case until September 21, 2021, and ordered the parties to submit a proposed scheduling order by October 5, 2021.[9]

As ordered, the parties filed a stipulated motion for entry of an amended scheduling order on October 5, 2021.[10] The following day, the court entered the operative scheduling order governing fact discovery and dispositive motions, which set the last day to serve written discovery for January 31, 2022, the close of fact discovery for February 28, 2022, and the deadline for dispositive motions for April 15, 2022.[11]

---

[6] ECF No. 2.

[7] ECF No. 14.

[8] ECF No. 23.

[9] ECF No. 24.

[10] ECF No. 25.

[11] ECF No. 26.

The day before the dispositive motion deadline, Ms. King filed her motion to reopen discovery to allow her to depose Mr. Cervinski.[12] On the dispositive motion deadline, Verizon filed its short form motion to quash the Subpoena[13] and a motion for summary judgment.[14] On May 6, 2022, Ms. King filed her motion to compel discovery responses from Verizon and to reopen discovery to allow her to depose Ms. Lofgren, conduct a Rule 30(b)(6) deposition of Verizon, and serve the Subpoena on SCMS.[15] Finally, on May 27, 2022, Ms. King filed a motion for additional discovery under Fed. R. Civ. P. 56(d),[16] which is currently pending before Judge Parrish.

Based upon the following analysis, the court: (I) denies Ms. King's motions seeking to compel discovery responses from Verizon and to reopen discovery for certain purposes, and (II) grants Verizon's short form motion to quash the Subpoena. The court does not address the Rule 56(d) motion before Judge Parrish.

## ANALYSIS

### I.    Ms. King's Motions Are Denied.

Ms. King's motions contain two main requests for relief. First, Ms. King seeks an order compelling Verizon to further respond to certain discovery requests. Second, Ms. King seeks to reopen discovery for certain purposes. For the reasons set forth below, the court denies both of Ms. King's requests and, consequently, denies her motions.

---

[12] ECF No. 61.

[13] ECF No. 65.

[14] ECF No. 66.

[15] ECF No. 86.

[16] ECF No. 103.

**A.  Ms. King's Request for an Order Compelling Verizon to Further Respond to Certain of Her Discovery Requests Is Denied.**

Ms. King seeks an order compelling Verizon to provide further responses to: (1) Request for Production ("RFP") No. 13; and (2) Interrogatory No. 23 and RFP Nos. 24-25. The court addresses each category of discovery requests below and concludes that Verizon is not required to provide additional responses to either category.

**1.  RFP No. 13**

Verizon is not required to provide a further response to RFP No. 13 because Ms. King did not timely seek court intervention to resolve the parties' dispute over RFP No. 13. Ms. King served RFP No. 13 on Verizon on March 17, 2021,[17] and Verizon provided its initial response to RFP No. 13 on May 7, 2021.[18] Taking into account the three-month stay of this case, Ms. King waited nearly nine months from the time of Verizon's original response to move to compel Verizon to provide a further response to RFP No. 13, despite Verizon's indication on several occasions that it did not have any documents responsive to RFP No. 13.[19] Additionally, Ms. King's motion was filed over two months after the close of fact discovery. Those delays in seeking court intervention doom Ms. King's request to compel Verizon to provide a further response to RFP No. 13.[20]

---

[17] ECF No. 86-1 at 9-10 of 25.

[18] ECF No. 86-4 at 17-19 of 35.

[19] *See, e.g.*, ECF Nos. 86-3, 96-3, 96-4.

[20] *Chrisman v. Bd. of Cnty. Comm'rs of Okla. Cnty.*, No. CIV-17-1309-D, 2020 WL 7033965, at *5 (W.D. Okla. Nov. 30, 2020) (denying the plaintiff's motion to compel where the plaintiff received the defendants' responses and objections to discovery requests approximately four and a half months before moving to compel and stating that "[a]lthough Rule 37 does not specify a time limit, a party seeking to compel discovery must do so in a timely manner"); *Kindig-It Design, Inc. v. Creative Controls, Inc.*, No. 2:14-cv-00867-JNP-BCW, 2017 WL 11476473, at *1

Ms. King attempts to justify the delay in bringing her motion by arguing that she was attempting to resolve the parties' dispute over RFP No. 13 during the entire period of the delay and brought her motion soon after Verizon sent an April 1, 2022 letter indicating that it would not be producing documents responsive to RFP No. 13.[21] Ms. King also contends that she learned for the first time during certain depositions in late-February 2022 that documents in Verizon's possession may exist that would be responsive to RFP No. 13. Ms. King's first argument fails because Verizon repeatedly indicated that it was not supplementing its response to RFP No. 13. The first of those indications was a November 22, 2021 letter[22]—which pre-dated Ms. King's motion to compel by approximately 5 months—and the April 1, 2022 letter merely repeated Verizon's previously stated position in the November 22, 2021 letter and a January 24, 2022

_____

(D. Utah Apr. 21, 2017) ("The filing of a motion to compel a month after the close of discovery was undoubtedly untimely."); *Johnson v. Sector 10*, No. 2:10-CV-00092-DAK, 2013 WL 4456636, at *2 (D. Utah Aug. 16, 2013) ("While the Federal Rules of Civil Procedure do not set a deadline for . . . motions to compel, district courts retain the discretion to decide whether a motion to compel 'is too tardy to be considered.'" (quoting *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012))); *Nw. Territory Ltd. P'ship v. Omni Props., Inc.*, No. CIVA 05-cv-02407-MJW-PAC, 2006 WL 3618215, at *1 (D. Colo. Dec. 11, 2006) ("The Federal Rules of Civil Procedure do not provide any deadline for filing a motion to compel. However, courts generally look to the discovery deadline date in considering whether a motion to compel is timely."); *Cont'l Indus., Inc. v. Integrated Logistics Sols., LLC*, 211 F.R.D. 442, 444 (N.D. Okla. 2002) ("Although Fed. R. Civ. P. 37 does not specify any time limit within which a Motion to Compel must be brought, courts have made it clear that a party seeking to compel discovery must do so in timely fashion. Once, as here, a party registers a timely objection to requested production, the initiative rests with the party seeking production to move for an order compelling it. Failure to pursue a discovery remedy in timely fashion may constitute a waiver of discovery violations." (citations omitted)); *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000) (concluding that "[a] party cannot ignore available discovery remedies for months").

[21] ECF No. 86-3.

[22] ECF No. 96-3.

letter[23] that it did not have documents responsive to RFP No. 13. In the court's view, it was incumbent upon Ms. King to seek court intervention much sooner than she did, and certainly prior to the February 28, 2022 fact discovery deadline.

Ms. King's second argument also fails because even if the court accepts as true the fact that she learned information during depositions in late-February 2022 showing that Verizon may have documents responsive to RFP No. 13, she waited over two months after learning that information to file her motion to compel. Again, that delay is incompatible with seeking timely court assistance to resolve a discovery dispute. In sum, Ms. King simply waited too long to seek court intervention to resolve the parties' dispute over RFP No. 13. Therefore, the court denies Ms. King's request to order Verizon to provide an additional response to RFP No. 13.

### 2. Interrogatory No. 23 and RFP Nos. 24-25

Through Interrogatory No. 23 and RFP Nos. 24-25, Ms. King seeks information regarding disparate treatment and, by way of her instant motion, seeks an order compelling Verizon to further respond to those discovery requests. Under Fed. R. Civ. P. 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering certain factors. Notwithstanding its original objections to Interrogatory No. 23 and RFP Nos. 24-25 on the grounds of proportionality, Verizon conceded at oral argument that proportionality was not an issue and focused exclusively on the issue of relevance. Therefore, the court focuses on relevance here.

---

[23] ECF No. 96-4.

The parties agree that Ms. King's Title VII claims for retaliation and racial discrimination are governed by the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*.[24] Under that framework, once the plaintiff has established a prima facie case of retaliation or discrimination, and the defendant has articulated a legitimate, nonretaliatory or nondiscriminatory reason for taking the adverse employment action, the burden then falls again on the plaintiff to show that the defendant's explanation is pretextual.[25] One of the ways a plaintiff can show pretext is on a theory of disparate treatment by showing that she was treated differently than other similarly situated employees.[26]

To be similarly situated for purposes of establishing pretext, the United States Court of Appeals for the Tenth Circuit has instructed that the individuals being compared must be "similarly situated . . . in all relevant respects."[27] "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline."[28] "In determining whether two employees are similarly situated, a 'court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees.'"[29]

---

[24] 411 U.S. 792, 802-04 (1973).

[25] *Id.*; *see also McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006) (addressing Title VII retaliation claim); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997) (addressing Title VII discrimination claim).

[26] *McGowan*, 472 F.3d at 745; *Aramburu*, 112 F.3d at 1404.

[27] *McGowan*, 472 F.3d at 745.

[28] *Aramburu*, 112 F.3d at 1404 (quotations and citations omitted).

[29] *McGowan*, 472 F.3d at 745 (quoting *Aramburu*, 112 F.3d at 1404).

"[E]ven employees who are similarly situated must have been disciplined for conduct of 'comparable seriousness' in order for their disparate treatment to be relevant."[30]

Under those principles, Ms. King must demonstrate that Interrogatory No. 23 and RFP Nos. 24-25 are seeking information about similarly situated employees for that information to be relevant to the claims and defenses in this case and, therefore, discoverable. As shown below, Ms. King cannot show that she is requesting comparator information from similarly situated employees.[31]

Interrogatory No. 23 and RFP No. 24 seek to discover information about employees supervised by Ms. King's immediate supervisor, Rodrigo Dos Santos ("Mr. Dos Santos"). Interrogatory No. 23 provides: "Please identify all employees managed by [Mr.] Dos Santos from 2014-2018, including each employee's race, dates during which the employee reports to Mr. Dos Santos, and any discipline the employee received from 2014-2018."[32] Verizon objected to Interrogatory No. 23 as being overly broad, being unduly burdensome, and seeking

---

[30] *Id.* (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000)).

[31] Verizon argues that Ms. King's motion must be denied as to Interrogatory No. 23 and RFP Nos. 24-25 because she did not send a prompt written communication to Verizon concerning the parties' dispute over those discovery requests. The version of DUCivR 37-1 that was in effect when the parties' discovery disputes arose provided, in relevant part, that "[t]he parties must make reasonable efforts without court assistance to resolve a dispute arising under Fed. R. Civ. P. 26-37 and 45. At a minimum, those efforts must include a prompt written communication sent to the opposing party . . . ." DUCivR 37-1(a)(1) (effective Dec. 1, 2020). Ms. King's April 20, 2022 letter was her first written communication to Verizon concerning Interrogatory No. 23 and RFP Nos. 24-25 and was sent 51 days after Verizon's February 28, 2022 responses to those discovery requests. ECF No. 86-4 at 32-34 of 35; ECF No. 86-11. The court need not determine whether that letter was a prompt written communication because Ms. King's requests for an order compelling Verizon to provide further responses to Interrogatory No. 23 and RFP Nos. 24-25 fail on their merits as demonstrated below.

[32] ECF No. 86-1 at 23 of 25.

information that is not relevant and disproportional to the needs of the case.[33] More specifically, Verizon objected to Interrogatory No. 23 as seeking information "not targeted to comparators relevant to [Ms. King]'s claims asserted in this case as it seeks information regarding all individuals that reported to a single supervisor over a 4-year period, including time during which [Ms. King] was not employed."[34] Subject to those objections, Verizon produced the names of twelve individuals who reported to Mr. Dos Santos during the time when Ms. King reported to him.[35]

RFP No. 24 provides: "Please provide all discipline documents for individuals listed in Verizon's response to Interrogatory No. 23."[36] Verizon objected to RFP No. 24 on the same bases it objected to Interrogatory No. 23.[37] Accordingly, Verizon declined to respond to RFP No. 24.[38]

RFP No. 25 seeks information about two employees who Ms. King believes may have committed similar violations of Verizon policies to those allegedly committed by Ms. King. RFP No. 25 provides: "Please provide all discipline documents received by employees Mikell Brown and Keri Berg."[39] Verizon objected to RFP No. 25 as being overly broad, being unduly burdensome, and seeking information that is not relevant and disproportional to the needs of the

---

[33] ECF No. 86-4 at 32 of 35.

[34] *Id.*

[35] *Id.*

[36] ECF No. 86-1 at 24 of 25. Although RFP No. 24 is entitled, "Request No. 17," Ms. King's counsel indicated at oral argument that it was intended to be RFP No. 24.

[37] ECF No. 86-4 at 33 of 35.

[38] *Id.*

[39] ECF No. 86-1 at 24 of 25. Although RFP No. 25 is entitled, "Request No. 18," Ms. King's counsel indicated at oral argument that it was intended to be RFP No. 25.

case.[40] More specifically, Verizon objected to RFP No. 25 because "the discipline records for the identified individuals do not make it more or less likely that Verizon discriminated against [Ms. King] (or otherwise retaliated against her) on the basis of her race as alleged in the Complaint in this case."[41]

In support of her contention that Verizon should be required to provide additional responses to Interrogatory No. 23 and RFP Nos. 24-25, Ms. King generally argues that those discovery requests seek information about employees similarly situated to her. However, when the court questioned Ms. King about that issue at oral argument, Ms. King identified only two specific bases to support her general argument—namely, that the discovery requests seek information about employees who had the same supervisor as Ms. King and were terminated in temporal proximity to Ms. King. Importantly, Ms. King fails to show that the discovery requests at issue were limited in any other fashion to ensure that they sought information for only similarly situated employees. Specifically, Ms. King fails to demonstrate that the employees for whom she seeks discipline information were subject to the same standards governing performance evaluation and discipline as Ms. King, had similar work histories to Ms. King, had the same company policies applied to them that Ms. King did, or were disciplined for conduct of comparable seriousness to Ms. King's conduct.[42] Indeed, other than the two limitations that Ms. King identified, the discovery requests seek "*any* discipline" information[43] and "*all* discipline

---

[40] ECF No. 86-4 at 33-34 of 35.

[41] *Id*. at 34 of 35.

[42] *McGowan*, 472 F.3d at 745; *Kendrick*, 220 F.3d at 1230; *Aramburu*, 112 F.3d at 1404.

[43] ECF No. 86-1 at 23 of 25 (emphasis added).

documents."[44] Consequently, Ms. King fails to establish that the discovery requests seek information about employees who are similarly situated "in all relevant respects."[45] Therefore, the information sought by Interrogatory No. 23 and RFP Nos. 24-25 is not relevant to the claims and defenses in this case, and, as a result, Verizon is not required to provide any further responses to those discovery requests.

Notwithstanding her failure to argue all of the appropriate standards for determining whether employees are similarly situated, Ms. King contends that: (1) the Tenth Circuit cases the court relies upon herein that addressed the issue of whether employees were similarly situated did so in the more narrow context of summary judgment, not in the broader context of discovery; and (2) she is entitled to see all of Verizon's discipline records to make her own determination about whether there is relevant evidence about employees similarly situated to Ms. King. For the following reasons, those arguments fail.

First, although Ms. King is correct in asserting that the Tenth Circuit cases upon which the court relies were in the context of summary judgment,[46] district courts in the Tenth Circuit, including this court, have relied upon the standards set forth in those cases when resolving discovery issues.[47] Thus, the court relies upon those cases in a similar fashion here.

---

[44] ECF No. 86-1 at 24 of 25 (emphasis added).

[45] *McGowan*, 472 F.3d at 745.

[46] *Id.*; *Kendrick*, 220 F.3d at 1230; *Aramburu*, 112 F.3d at 1404.

[47] *See, e.g.*, *Schmelzer v. IHC Health Servs., Inc.*, No. 2:19-CV-00965-TS-JCB, 2022 WL 3108078, at *5 (D. Utah Aug. 4, 2022) (applying standards in the discovery context); *Rains v. Westminster Coll.*, No. 2:20-CV-00520, 2022 WL 294827, at *2 (D. Utah Feb. 1, 2022) (applying standards to a motion to compel discovery); *Flowers v. Matheson Tri-Gas, Inc.*, No. CV 19-148 RB/SCY, 2020 WL 1889108, at *2 (D.N.M. Apr. 16, 2020) (applying standards in the context of a motion for protective order to address "what comparator evidence over what period of time is discoverable"); *Equal Emp. Opportunity Comm'n v. Dillon Cos., Inc.*, No. 09-CV-02237-ZLW-

Second, Ms. King fails to provide any authority for the proposition that she should be allowed to see all of Verizon's discipline records to determine on her own whether there is any relevant evidence concerning employees similarly situated to Ms. King. Indeed, when directly questioned about that issue at oral argument, Ms. King indicated that she had no caselaw to support that extremely broad view of discovery and was relying solely upon Rule 26(b)(1) and her litigation experience. That support is unpersuasive here.

**B.      Ms. King's Request to Reopen Discovery for Certain Purposes Is Denied.**

Ms. King seeks to reopen discovery to allow her to: (1) depose Mr. Cervinski, (2) depose Ms. Lofgren, (3) conduct a Rule 30(b)(6) deposition of Verizon, and (4) serve the Subpoena on SCMS. Below, the court sets forth the standards governing Ms. King's request to reopen discovery, then addresses each of Ms. King's specific requests. As demonstrated below, Ms. King fails to demonstrate that discovery should be reopened for any of her requested purposes.

Ms. King's motion is governed, in part, by Fed. R. Civ. P. 16(b)(4), which provides that a scheduling order "may be modified only for good cause and with the judge's consent." Additionally, because Ms. King's request was made *after* the discovery deadline expired, that request is governed, in part, by Fed. R. Civ. P. 6(b)(1)(B), which provides that "the court may, for good cause," extend a deadline after it has expired "if the party failed to act because of excusable neglect." Therefore, Ms. King must show both good cause and excusable neglect for her request to be granted.

---

MEH, 2010 WL 3239262, at *3 (D. Colo. Aug. 13, 2010) (applying standards to motion to compel discovery).

The Tenth Circuit has recognized that good cause and excusable neglect are not identical but are interrelated.[48] With respect to what is required to show good cause, the Tenth Circuit has stated:

> Without attempting a rigid or all-encompassing definition of good cause, it would appear to require *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required.[49]

"'[G]ood cause' requires a greater showing than 'excusable neglect.'"[50] "Good cause comes into play in situations in which there is no fault—excusable or otherwise.  In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant."[51] "It requires the moving party to show the deadline cannot be met despite the movant's diligent efforts."[52]

To determine whether the lesser standard of excusable neglect is shown,

> a court must take into account "all relevant circumstances surrounding the party's omission." These include four relevant factors: (1) "the danger of prejudice" to the nonmoving party; (2) "the length of the delay and its potential impact on judicial proceedings"; (3) "the reason for the delay, including whether it was

---

[48] *In re Kirkland*, 86 F.3d 172, 175 (10th Cir. 1996); *Putnam v. Morris,* 833 F.2d 903, 905 (10th Cir. 1987).

[49] *In re Kirkland*, 86 F.3d at 175 (emphasis in original) (quotations and citations omitted); *see also Putnam,* 833 F.2d at 905.

[50] *In re Kirkland*, 86 F.3d at 175 (footnote omitted).

[51] *Utah Republican Party v. Herbert*, 678 F. App'x 697, 700-01 (10th Cir. 2017) (quotations and citation omitted).

[52] *Id*. at 701 (quotations and citation omitted).

within reasonable control of the movant"; and (4) "whether the movant acted in good faith."[53]

"The Tenth Circuit has . . . held that the third factor . . . is 'perhaps the most important single factor . . . in determining whether neglect is excusable.'"[54] "'[A]n inadequate explanation for delay, may, by itself, be sufficient to reject a finding of excusable neglect.'"[55]

In addition to those standards, the Tenth Circuit has provided the following factors for the court to consider when determining whether to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.[56]

The Tenth Circuit has further instructed that "[w]hether to extend or reopen discovery is committed to the sound discretion of the trial court."[57]

---

[53] *Shifers v. Arapahoe Motors, Inc.*, No. 17-CV-01753-CMA-KLM, 2018 WL 6620866, at *3 (D. Colo. Dec. 18, 2018) (citations omitted) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)); *see also Shifers*, 2018 WL 6620866, at *3 (providing that although the *Pioneer* Court's "discussion of excusable neglect . . . concerned Bankruptcy Rule 9006(b)(1), . . . its analysis rested on the plain meaning of the terms . . . . Accordingly, the Court of Appeals for the Tenth Circuit has extended the *Pioneer* standard of excusable neglect to motions arising under . . . Federal Rule of Civil Procedure 6(b)" (citing multiple Tenth Circuit cases) (quotations and citations omitted)).

[54] *Shifers*, 2018 WL 6620866, at *3 (third alteration in original) (quoting *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)).

[55] *Id.* (alteration in original) (quoting *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017)).

[56] *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987).

[57] *Id.*

Given the similarity between the good-cause standard (i.e., showing that the deadline cannot be met despite the movant's diligent efforts) and the fourth factor to consider when determining whether to reopen discovery (i.e., showing that the moving party was diligent in obtaining discovery within the guidelines established by the court), the court considers those two factors together below. Additionally, because the court concludes below that Ms. King has not established good cause, the court need not consider the lesser standard of excusable neglect. The court now turns to the required factors for determining whether to reopen discovery.

At the outset, the court considers factors one, two, three, and six for all of Ms. King's requests. Because a trial date has not yet been scheduled in this case, the first factor weighs in favor of reopening discovery. At the same time, Verizon opposes each of Ms. King's requests, meaning that the second factor weighs against reopening discovery. As for the third factor, the court concludes that Verizon would be prejudiced if fact discovery were to be reopened, which weighs against reopening discovery. Verizon has already moved for summary judgment in accordance with the deadline for dispositive motions the court set in the operative scheduling order. Reopening discovery at this point for Ms. King's stated purposes would undoubtedly require Verizon to re-brief its motion for summary judgment, which some courts have concluded amounts to prejudice under the third factor.[58] Moreover, having the benefit of Verizon's summary judgment motion precisely tells Ms. King which additional discovery is necessary to thwart the motion. That is both unfair and prejudicial. Finally, Verizon does not dispute that allowing Ms.

---

[58] *See, e.g.*, *Klaczkiewicz v. Nationstar Mortg. LLC*, No. 17-CV-147-F, 2018 WL 11252671, at *2 (D. Wyo. May 18, 2018) (concluding that reopening discovery after the defendants had filed a summary judgment motion would cause the defendants undue prejudice and citing multiple cases in support of that proposition).

King to pursue each of her requests may lead to relevant evidence, which means that the sixth factor weighs in favor of reopening discovery.

The court now turns to analyzing the fourth and fifth factors, which the court concludes are the most important factors here. As shown below, the need for the discovery Ms. King now seeks was foreseeable throughout discovery, and Ms. King fails to show that she was diligent in seeking that discovery. Accordingly, the relevant factors weigh against reopening discovery for Ms. King's requested purposes, and Ms. King fails to show good cause to amend the scheduling order. Therefore, the court denies each of Ms. King's requests.

### 1.   Mr. Cervinski

Ms. King seeks to reopen discovery to take Mr. Cerviniski's deposition. For the following reasons, the court denies Ms. King's request. First, the need to depose Mr. Cervinski was foreseeable. In her Equal Employment Opportunity Commission Charge of Discrimination, Ms. King specifically named Mr. Cervinski as the person responsible for the race harassment she allegedly endured and complained that he failed to genuinely investigate her complaints.[59] Additionally, Ms. King testified at her deposition that she detailed her complaints to Mr. Cervinski in two or three interviews with him in 2015 and that Mr. Cervinski was one of the decisionmakers with respect to her termination.[60] Further, Verizon named Mr. Cervinski in its initial disclosures as a witness with potential discoverable information about the "investigation into complaints regarding [Ms. King] and the circumstances surrounding [Ms. King]'s

---

[59] ECF No. 81-4 at 4, 9 of 11.

[60] ECF No. 81-2 at 3-6 of 6.

termination from Verizon."[61] Under those circumstances, the need to depose Mr. Cervinsky was foreseeable for quite some time if not from the outset of the case.

Ms. King claims that the need to depose Mr. Cervinsky was not foreseeable because she was generally confused about who was responsible for her termination and that the documents produced by Verizon tended to point to Kevin Atkinson ("Mr. Atkinson") as the responsible party. Those arguments are belied by Ms. King's own allegations and deposition testimony, as indicated above.

Second, Ms. King was not diligent in seeking to either obtain additional discovery about Mr. Cervinsky or take his deposition during the discovery period. Despite her understanding of Mr. Cervinski's role in her termination demonstrated by the Charge of Discrimination and her deposition testimony, and notwithstanding Verizon's disclosure of Mr. Cervinsky as a potential witness, Ms. King sought no additional discovery concerning Mr. Cervinsky during the nearly year-long discovery period, which would have likely led to information showing the need to depose him.[62] Therefore, the court denies Ms. King's request to reopen discovery to take Mr. Cerviniski's deposition.

### 2.    Ms. Lofgren

Ms. King seeks to reopen discovery to take Ms. Lofgren's deposition. For the following reasons, the court denies Ms. King's request. First, the need to depose Ms. Lofgren was

---

[61] ECF No. 81-6 at 4 of 9.

[62] Ms. King also asserts that she was diligent in attempting to depose Mr. Cervinsky as soon as she learned of his true role in her termination after Mr. Atkinson's deposition was completed on March 11, 2022. Even if the court assumes that is true, it does not excuse Ms. King's failure to seek any discovery concerning Mr. Cervinsky during the discovery period to determine if she needed to depose him especially given his prominent role in Ms. King's case from the outset.

foreseeable. Ms. King testified at her deposition that Ms. Lofgren, who was Mr. Cervinski's supervisor, was one of the decisionmakers with respect to Ms. King's termination.[63] Additionally, Ms. Lofgren was one of the individuals who approved the recommendation for termination of Ms. King's employment.[64] Further, as with Mr. Cervinski, Verizon named Ms. Lofgren in its initial disclosures as a witness with potential discoverable information about the "investigation into complaints regarding [Ms. King] and the circumstances surrounding [Ms. King]'s termination from Verizon."[65] Given those facts, the need to depose Ms. Lofgren was foreseeable.

Second, Ms. King was not diligent in seeking to either obtain additional discovery about Ms. Lofgren or depose Ms. Lofgren. Although Ms. King complains that the description of Ms. Lofgren's knowledge in Verizon's initial disclosures was too vague for her to determine whether she needed to depose Ms. Lofgren, Ms. King did not raise that issue in a timely fashion. Furthermore, despite the foregoing facts showing that the need to take Ms. Lofgren's deposition was foreseeable, Ms. King did not seek to depose Ms. Lofgren until well after the close of fact discovery and after Verizon had filed its motion for summary judgment. Accordingly, the court denies Ms. King's request to reopen discovery to take Ms. Lofgren's deposition.

### 3.   Rule 30(b)(6) Deposition of Verizon

Ms. King seeks to reopen discovery to take Verizon's Rule 30(b)(6) deposition. Ms. King concedes that Verizon's Rule 30(b)(6) deposition was foreseeable. Indeed, she sought to take that deposition prior to the expiration of fact discovery. Thus, the court focuses on whether Ms. King

---

[63] ECF No. 96-1 at 3-4 of 7.

[64] ECF No. 83-3 at 5 of 5 (filed under seal).

[65] ECF No. 81-6 at 5 of 9.

was diligent in seeking to take the deposition. As shown, below the court concludes that she was not and, therefore, denies her request.

On February 17, 2022, this court granted Verizon's motion for a protective order, which prohibited Ms. King from taking Verizon's Rule 30(b)(6) deposition because her notice of deposition was untimely under DUCivR 30-2.[66] On March 3, 2022, Ms. King objected to this court's order.[67] On April 18, 2022, Judge Parrish overruled Ms. King's objection.[68] After reaching that decision, Judge Parrish's order stated:

> The court notes that once [Ms.] King discovered that she had missed the deadline for noticing a 30(b)(6) deposition and that Verizon objected to the deposition on that basis, she could have moved to extend the discovery cutoff in order to permit the deposition to take place. Although the discovery deadline has now passed, this order is made without prejudice to move to reopen discovery to permit a 30(b)(6) deposition.[69]

As demonstrated by that statement, when this court granted Verizon's motion for a protective order related to Ms. King's Rule 30(b)(6) deposition notice, Ms. King was left with a strategic choice. On one hand, she could object to this court's order and continue to press her position that her Rule 30(b)(6) notice was timely, without moving to extend the February 28, 2022 fact discovery deadline before it expired. On the other hand, Ms. King could have filed such a motion while still pursuing her objection to this court's order. As is clear, Ms. King chose the former strategy, which created the possibility of the precise situation in which Ms. King finds

---

[66] ECF No. 52.

[67] ECF No. 54.

[68] ECF No. 71.

[69] *Id.* at 3.

herself: having her objection overruled and being forced to seek to reopen rather than extend discovery. In the court's view, Ms. King's choice of strategy is not compatible with a finding of diligence in obtaining Verizon's Rule 30(b)(6) deposition within the discovery period the court established. Therefore, the court denies her request to reopen discovery to take that deposition.

### 4.     Subpoena

Ms. King seeks to reopen discovery to serve the Subpoena on SCMS. For the following reasons, the court denies Ms. King's request. First, the need for the leave records that are sought by the Subpoena was foreseeable. Ms. King concedes that she knew from the outset of this case that her leave time was an issue. Indeed, Ms. King testified during her deposition about taking leave from Verizon.[70]

Second, Ms. King was not diligent in seeking to obtain her leave records. Verizon disclosed Ms. King's complete personnel file to Ms. King with its initial disclosures in February 2021,[71] and again advised Ms. King that it had made that disclosure in response to one of Ms. King's RFPs.[72] Although Ms. King's personnel file did not contain her leave records, she admits, as stated above, that her leave was an issue in this case. Nevertheless, Ms. King never served a discovery request on Verizon specifically seeking her leave records. Further, the first time she specifically raised the issue of her leave records with Verizon was in a February 21, 2022 meet-and-confer letter,[73] which was over one year after Verizon disclosed her personnel file.

---

[70] ECF No. 65-3 at 3, 5 of 5.

[71] ECF No. 81-6.

[72] ECF No. 86-4 at 15 of 35.

[73] ECF No. 79-1.

Ms. King contends that the need for her leave records was not apparent until late-March 2022, when she learned that it was SCMS, not Verizon, which had her leave records. Ms. King further contends that she was diligent in issuing the Subpoena soon after making that discovery. Ms. King's arguments are contradicted by the fact that she raised the issue of leave records with Verizon in her February 21, 2022 meet-and-confer letter. Further, the fact that she learned for the first time in late-March 2022 that SCMS had her leave records does not excuse her failure to seek those records during the year-long discovery period, particularly given that she knew her leave time was an issue in this case. Because Ms. King's leave was a known, relevant issue long before the discovery period expired, she should have availed herself of discovery during the court-ordered discovery period. Accordingly, the court denies Ms. King's request to reopen discovery to serve the Subpoena on SCMS.

## II.   Verizon's Short Form Motion to Quash the Subpoena Is Granted.

Given that the court has concluded that it will not reopen discovery to allow Ms. King to serve the Subpoena on SCMS, the court grants Verizon's short form motion to quash the Subpoena. Ms. King served the notice of intent to issue the Subpoena on April 11, 2022.[74] Under the scheduling order in this case, the last day to serve written discovery was January 31, 2022, and the close of fact discovery was February 28, 2022.[75] Because the Subpoena post-dates the fact discovery deadline, the court must quash it.[76]

---

[74] ECF No. 65-1.

[75] ECF No. 26.

[76] *Alfwear, Inc. v. Kulkote, LLC*, No. 2:19-CV-00027-CW-JCB, 2020 WL 4196446, at *2 (D. Utah July 21, 2020) ("Rule 45 subpoenas sought after the discovery cut-off date are improper attempts to obtain discovery beyond the discovery period and should be quashed on this basis.").

**<u>ORDER</u>**

Based upon the foregoing analysis, IT IS HEREBY ORDERED:

1. Ms. King's motion to compel discovery responses from Verizon and to reopen discovery to allow Ms. King to depose Ms. Lofgren, conduct a Rule 30(b)(6) deposition of Verizon, and serve the Subpoena on SCMS[77] is DENIED.

2. Ms. King's motion to reopen discovery to allow Ms. King to depose Mr. Cervinski[78] is DENIED.

3. Verizon's short form motion to quash the Subpoena[79] is GRANTED.

IT IS SO ORDERED.

DATED this 16th day of September 2022.

       BY THE COURT:

       _____
       JARED C. BENNETT
       United States Magistrate Judge

---

[77] ECF No. 86.

[78] ECF No. 61.

[79] ECF No. 65.